UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

REGENCY HOSPITAL COMPANY OF
MERIDIAN, LLC                                          PLAINTIFF

VS.                                  CIVIL ACTION NO. 4:04CV155LS

GILSBAR, INC. , MEDCOM CARE
MANAGEMENT, INC., HINES &
ASSOCIATES, INC. AND C.F. BEAN, LLC                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

     This cause is before the court on motion of defendants
Gilsbar, Inc., MedCom Care Management, Inc., of Hines &
Associates, Inc. and C.F. Bean, LLC, for summary judgment pursuant
to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff
Regency Hospital Company of Meridian, LLC, has responded in
opposition to the motions and the court, having considered the
memoranda of authorities, together with attachments, concludes
that MedCom's motion should be granted, and the motions of the
remaining defendants should be granted in part and denied in part,
as explained hereafter.

     This case involves defendants' alleged wrongful refusal to
pay Regency, a third-party medical provider, for medical services
rendered to an insured under her husband's employer's ERISA plan.
The basic facts giving rise to this lawsuit were set forth in the
court's May 5, 2005 memorandum opinion and order as follows:

Beginning February 9, 2003, Regency, a hospital in Meridian, Mississippi, admitted and began providing treatment to Joella Webb for a closed head injury she received when she fell down some stairs in November 2002.  From the time of her fall to the date of her admission to Regency, Mrs. Webb had been a patient at University of South Alabama Hospital, but in February 2003, was transferred to Regency for continued treatment.

At all relevant times, including at the time of her fall and at the time Regency accepted Mrs. Webb for admission, Mrs. Webb was a covered dependent under a self-funded insurance plan of C.F. Bean, her husband's employer.  The plan was administered by defendant Gilsbar on C.F. Bean's behalf.  According to the complaint, on February 4, 2003, an employee of Hines & Associates, a case management/utilization review company working for Gilsbar, contacted Regency on Gilsbar's behalf to discuss the possibility of transferring Mrs. Webb to Regency.  Regency had no provider agreement or relationship with Gilsbar or C.F. Bean and hence had no obligation to admit Mrs. Webb.  However, following negotiations, Regency agreed to accept her as a patient, and on February 6, Gilsbar and Regency executed an "Out of Contract Letter Agreement" (Letter Agreement), which provided that Gilsbar would pay Regency at a negotiated per diem rate of $1,650 per day for Intensive Medically Complex care, $1,450 per day for Intermediate Medically Complex care and $1,250 per day for

2

Medically Complex care.  Contemporaneously, Gilsbar's agent, Hines, precertified the care required to be provided by Regency to Mrs. Webb for the period February 9 through February 19, and on February 9, Mrs. Webb was admitted to Regency.

Thereafter, at irregular intervals over the following two months, ranging from every few days to every couple of weeks, Hines and MedCom, which had taken Hines' place as Gilsbar's representative, continued to precertify the care required for Mrs. Webb for the specified time period.  On March 5, Regency submitted a bill to Gilsbar for services rendered to Webb.  Gilsbar issued an Explanation of Benefits dated March 23, 2004 denying payment. The EOB recited:  "Charges related to this condition are excluded from your plan.  Please refer to the section of your Plan Document titled GENERAL EXCLUSIONS AND LIMITATIONS."  Subsequently, on April 7, 2004, Regency was advised by phone that Mrs. Webb's accident and resulting injuries were excluded based on an exclusion for alcohol-related injuries in the C.F. Bean policy.[1]

---

[1]     The C.F. Bean plan provides:
Charges for services, surgery, supplies or treatment for the following are not covered:
. . .
2.   Illnesses or injuries occurring
. . .
     e.  as a result of or related to the use or consumption of alcohol, illegal drugs, or other illegal substances (including driving while under the influence of alcohol or drug).  A blood alcohol level of 0.1 or greater or testing positive at Department of Transportation specified levels for an illegal substance shall determine if the accident or injury is alcohol or

3

Subsequent claims by Regency on April 5 and May 7 were likewise
denied for the same reason.[2]

Regency's complaint consists of eighteen counts, which
include claims (and variations on claims) for fraud, negligent
misrepresentation, negligence, conspiracy, breach of contract,
tortious breach of contract, quantum meruit and promissory
estoppel.[3]  All of these claims are based on Regency's position,
that it "was the target of a scam by Gilsbar and Hines acting on
Bean's behalf" because "[n]ot only did a policy exclusion exist,
undisclosed to Regency . . . despite requests for exactly that
information, . . . Gilsbar possessed evidence that the exclusion
potentially applied to Webb, and it was actively investigating

_____

   drug related.
According to defendants, because results of a blood alcohol test
showed that Mrs. Webb's blood alcohol level was 0.116 at the time
of her fall, her accident was alcohol related in accordance with
the terms of the plan and therefore, injuries arising out of the
accident were not covered.

   [2]   Mrs. Webb remained a patient of Regency's until she was
discharged on May 3, 2004.

   [3]   Plaintiff's complaint includes 18 separate counts, as
follows:

| | | | |
|---|---|---|---|
| I. | Civil Conspiracy | X. | Agency |
| II. | Conspiracy to Commit Fraud | XI. | Actual/Express Authority |
| III. | Fraud in the Inducement | XII. | Implied/Actual Authority |
| IV. | Intentional Fraud | XIII. | Negligent Contracting |
| V. | Aiding and Abetting Fraud | XIV. | Negligent Supervision |
| VI. | Negligent Misrepresentation | XV. | Breach of Duty of Good Faith |
| VII. | Fraudulent Omission | XVI. | Promissory Estoppel |
| VIII. | Negligence | XVII. | Quantum Meruit |
| IX. | Breach of Contract | XVIII. | Tortious Breach of Contract |

4

whether it could apply this exclusion and deny both coverage and . . . payment."

Defendants have moved for summary judgment on each of plaintiff's claims, contending that the law and/or undisputed facts of record do not support the claims.  Having considered the parties' arguments and evidence, the court concludes as follows.

First, the court concludes that MedCom is entitled to summary judgment.  MedCom's involvement in this case was limited to precertifying care for Mrs. Webb for limited periods of time <u>after</u> her admission to Regency.  MedCom had no involvement in the circumstances which led to Mrs. Webb's admission to Regency in the first place, which is the true focus of plaintiff's complaint.

As to the remaining defendants, the court agrees that Regency cannot recover on a breach of contract theory.  The Letter Agreement at issue does recite, "Payor (Gilsbar) agrees to pay us at the rates detailed on the attached schedules and Exhibit 'A.'" However, paragraph 6 of the agreement, written in by Gilsbar, states, "Benefits must be covered under the C.F. Bean LLC plan of benefits."  Regency's representative signed the agreement containing this seemingly explicit addition, yet Regency argues that "[n]othing in this language, or elsewhere in the Agreement, ties payment to any conditions regarding coverage."[4]  The court

_____

[4]     Regency argues, "Nothing in the Agreement defined 'benefits' or explained the relationship (if any) between 'benefits' and the Payor's already-quoted promise to pay the rates

cannot agree.  Notwithstanding plaintiff's strained attempt to interpret this language otherwise, paragraph 6 unambiguously conditions Gilsbar's/Bean's payment obligation on benefits being covered or payable under the terms of Bean's plan.  "Benefits" are not "covered" where a policy exclusion applies.  However, while Regency cannot recover against defendants for alleged breach of contract, the court is of the opinion that Regency has presented sufficient evidence to withstand defendants' motion for summary judgment with respect to her fraud-based claims.

Gilsbar and Hines point out in their motions that Regency has asserted claims for fraud in the inducement, intentional fraud and fraudulent omission/concealment, and argue that "[w]hether the Plaintiff is successful in prevailing on these claims, as well as its assertion of civil conspiracy, conspiracy to commit fraud, and aiding and abetting fraud, hinges, in essence, on whether Gilsbar (or Hines) made false representations to Regency Hospital (reasonably relied upon by the Plaintiff to its detriment), or whether Gilsbar (or Hines) omitted and/or concealed material facts that [they] had a duty to disclose."

As noted by defendants, "[f]raud in the inducement," which is the gravamen of all plaintiff's fraud and conspiracy claims, arises when a party to a contract makes a fraudulent

_____

defined in the Agreement.  Nothing in the Agreement stated that Gilsbar or Bean would not be liable for paying non-covered benefits."

misrepresentation, i.e., by asserting information known to be untrue, for the purpose of inducing the innocent party to enter into a contract." <u>Lacy v. Morrison</u>, 906 So. 2d 126, 129 (Miss. Ct. App. 2004). Contracts entered into under such circumstances are voidable by the innocent party if that party can establish, by clear and convincing evidence, each of the elements of fraudulent misrepresentation, as follows: "(1) A representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the matter reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance upon its truth; (8) his right to rely thereon; (9) his consequent and proximate injury." <u>Id</u>.

Among other things, Regency points to the deposition testimony of Karen Anderson, a case manager for Hines, who testified about a phone conversation she had about Mrs. Webb's case with Carolyn Scafidel of Gilsbar on January 21, 2004, which conversation was memorialized in a case activity note by Anderson. Anderson stated that she told Scafidel that Gilsbar needed to do an on-site visit to the hospital where Mrs. Webb had been initially received, and that she could "review the chart for the patient's BA (blood alcohol) level." When Scafidel asked why that was necessary, Anderson explained that some plans exclude benefits if alcohol is involved. Anderson stated in her testimony that the

issue of Mrs. Webb's blood alcohol level had come up as a potential issue because some of the other facilities in which Hines had tried to place Mrs. Webb had conducted chart reviews and discovered her blood alcohol level, and reported this back to Hines.

Additionally, although Jane Bucano, the Gilsbar employee who added paragraph 6 to the Letter Agreement, testified she had no recollection of discussing the alcohol exclusion issue with Sharon Mottram of Hines and did not know that the exclusion might apply, Mottram verified a log entry she made regarding a conversation with Bucano:

> Telephone call from Jane states that she's faxing an amended copy of the fax.  States they have asked for clinical from USA.  States that charges will not be covered if found to be related to alcohol.  Will amend the agreement to state admission must be a covered benefit.

Mottram testified this note meant that "Jane told you if these charges are related to alcohol under the plan exclusion, then [Gilsbar is] not going to cover this."

This evidence, viewed in the light most favorable to Regency, suggests that at the time Regency entered the Letter Agreement, agreeing to accept Webb as a patient, Gilsbar/Hines knew or had reason to know that Mrs. Webb's injuries were (or would be) excluded from coverage under C.F. Bean's plan.  Assuming, as this court must, that Gilsbar/Hines knew or had reason to know that Mrs. Webb's injuries were likely excluded from coverage and that

8

payment therefore would not be forthcoming, then the putative agreement to pay Regency in accordance with the payment schedule established by the Letter Agreement would have amounted to a misrepresentation, notwithstanding the inclusion of paragraph 6.[5] Simply put, if Gilsbar/Hines knew at the time of contracting that benefits were not covered, then they also knew that Gilsbar would not pay according to the schedule established by the Letter Agreement and thus could not have lawfully represented that they would.[6]

In addition to this evidence, plaintiff has also presented evidence that an employee of the Regency company that undertook to verify insurance coverage for Mrs. Webb specifically inquired of

---

[5]   Defendants contend that at the time Regency was contacted and ultimately agreed to accept Mrs. Webb as a patient, they had not yet determined that her injuries would be excluded; they knew that she had tested positive for alcohol at the time of the accident but assert they had not yet seen the toxicology report which recorded her actual blood alcohol level.   In the court's opinion, questions as to the full extent and timing of their knowledge are best developed and determined in the context of a trial on the merits.

[6]   The court is aware of Hines' position that its role was merely to evaluate and precertify Mrs. Webb's proposed treatment for medical necessity and that it was neither responsible to, nor had any role in determining coverage.   The court also recognizes Hines' argument and evidence that it consistently informed Regency in every written or oral communication that it was making no guarantee of payment of benefits.   These disclaimers, and similar disclaimers made by Gilsbar, are certainly relevant, but in the court's opinion, are not dispositive of the issue of their potential liability with respect to Regency's claim that defendants fraudulently induced it (and conspired to induce it) to enter the Letter Agreement.

Gilsbar whether there were any exclusions in the policy, and any that potentially applied to Mrs. Webb, and was told "No."  Regency thus asserts that at the time of contracting, Gilsbar not only failed to disclose the material fact that an exclusion likely applied, but actually affirmatively misrepresented that there was no potentially applicable exclusion.

In particular, Regency has submitted an insurance verification form completed by a Regency employee, identified as Jerome Brown, which reflects that "JB" undertook to verify coverage with Gilsbar employee "Kimberly."  "JB" checked the box for "No" where the form asked for policy exclusions.  Although Brown is no longer employed by Regency and his whereabouts are presently unknown, Pat Jones of Regency, who was Brown's direct supervisor, has submitted an affidavit in which she states that she is familiar with the form and with Regency's policies and procedures for completion and use of the form in the verification of insurance benefits.  Jones states that it was Brown's job in completing the form to inquire as to whether any policy exclusions existed in the plan and whether or not they were applicable to the patient, and that if Brown had been advised of any policy exclusions known by Gilsbar to be listed in Bean's plan, it would have been his job to note such exclusions on the form and relay that information to Regency.

Related to this same issue, Regency has also submitted the affidavit of Lenille Akin of Regency in which she states that she received the verification of insurance coverage and that based on the form, "it was [her] understanding that no such exclusions were known to Bean, Gilsbar, Inc., or Hinds & Associates, Inc., to exist in the Bean plan, of which [she] was not provided a copy and had to rely on those entities' representations."

Regency and Hines argue that Akins' affidavit should be stricken as it is not based on personal knowledge and is inconsistent with her deposition testimony, in which she purported to know little about the insurance verification form, stated she did not know who "JB" was and testified she played no role in verifying Webb's coverage.  They contend that Jones' affidavit should be stricken as it is not based on personal knowledge: "She has no personal knowledge as to the substance of Brown's communication with 'Kimberly' or whether he actually even spoke with her.  Jones can only assume why 'No' was written in response to item 24; she has no personal knowledge of the actual events that transpired."  From their conclusion that Jones' affidavit should be stricken, defendants apparently reason that the form and the contents of the form are hearsay and must be stricken as well.

Though the issue may be close, the court believes, as contended by Regency in its response to defendants' motion to strike, that the insurance verification form is admissible under

11

either or both the business records exception or the residual
exception to the hearsay rule.  The court is also of the opinion
that Jones' affidavit constitutes competent and admissible proof
as to the form and the inquiry prompted by the form, Brown's
duties relative to completion of the form, and the role of the
form in the insurance verification process.  Further, the court
finds no merit to defendants' argument that Akin's statements in
her affidavit are outside her personal knowledge, and any alleged
inconsistencies are not so manifest as to warrant striking her
affidavit.[7]

In sum, Regency has presented evidence that, before going to
Regency to ask that it accept Mrs. Webb as a patient, both Hines
and Gilsbar had information concerning Mrs. Webb's blood alcohol
level at the time of the accident; that they knew that the C.F.

---

[7]      In response to an argument by Gilsbar that this
particular factual scenario was not pled by Regency in its
complaint as a basis for its fraud claims, Regency has moved to
amend to clarify a fraud claim against Gilsbar for fraudulently
inducing Regency to enter into the Letter Agreement to provide
care for Mrs. Webb by falsely telling Regency that no policy
exclusion existed which would provide a basis for denying
coverage.  The court is of the opinion that the motion to amend
should be granted.  Although the court is not persuaded that this
claim was pled, or pled with particularity in Regency's initial
complaint, and while the court finds Regency's explanation for its
delay in alleging this claim less than compelling, it is
nevertheless of the opinion that the amendment to add this claim
is important to Regency's case; and that defendants would not be
prejudiced by the amendment because, notwithstanding defendants'
assertion to the contrary, inclusion of this theory would not be a
basis for reopening discovery as it has already been the subject
of discovery, and defendants would not otherwise be prejudiced.

Bean plan excluded coverage for alcohol-related injuries; that they knew or had reason to know that coverage was likely excluded and yet agreed to pay Regency according to the schedule established by the Letter Agreement knowing that no payment would be made under the Agreement; that when Gilsbar inserted the provision in the Letter Agreement conditioning payment on there being coverage under the Bean plan, they knew or had reason to know there was no coverage and yet withheld this material information; and finally, and in addition to the concealment of material information, Gilsbar, when confronted with a specific inquiry by Regency as to whether exclusions existed which potentially applied, misrepresented there were none.

In the court's opinion, viewing the evidence and inferences in the light most favorable to Regency, it cannot be concluded that Gilsbar or Hines is entitled to summary judgment on plaintiff's misrepresentation/fraud claims,[8] or, the court would note, on Regency's related claim for punitive damages.

---

[8]   Regency has also alleged claims of promissory estoppel and quantum meruit.  It has effectively conceded that such claims are not viable, but has requested to amend to include an equitable estoppel claim, by which it alleges that defendants are equitably estopped from relying on the Bean policy's alcohol-related injury exclusion by virtue of having failed to disclose its likely applicability while promising to pay under the contract and by Gilsbar's having misrepresented that there were no policy exclusions while promising to pay.  In the court's opinion, this is but application of an alternative legal theory to the same basic set of facts; its addition, to the extent that it need be specifically pled, would not prejudice defendants, and will be allowed.

With respect to Regency's fraud claims, which are the claims that remain in the case, C.F. Bean argues that ERISA preempts Regency's putative fraud claims against it. It contends, alternatively, and that even if ERISA preemption does not apply to these claims, Regency cannot succeed on a fraud claim against it, first, because Regency has not alleged that Regency dealt with C.F. Bean at all with respect to Gilsbar's contracting for Regency's admission and treatment of Mrs. Webb much less that Bean misrepresented or failed to disclose any facts to Regency, and second, because of the absence of proof that Gilsbar and/or Hines acted as C.F. Bean's agent, with actual or apparent authority, in committing the alleged fraud. In the court's opinion, Bean's argument based on ERISA fails for the reasons explained it its earlier opinion. Moreover, while it is true that Bean itself did not misrepresent or conceal any facts from Regency, a jury could reasonably find that Gilsbar and/or Hines, held out by C.F. Bean as its third-party administrator and utilization review company, respectively, acted with apparent authority in their dealings with Regency. See Tarver v. J.W. Sanders Cotton Mill, 192 So. 17, 19-20 (Miss. 1939) ("An act is within the 'apparent' scope of an agent's authority when a reasonably prudent person, having knowledge of the nature and usages of the business, is justified in supposing that he is authorized to perform it from the character of the duties which are known to be intrusted to him.").

14

Based on the foregoing, it is ordered that the motions of Gilsbar, Hines and C.F. Bean for summary judgment are denied, except to the limited extent set forth herein, and MedCom's motion for summary judgment is granted.

SO ORDERED this 21st day of November, 2006.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

15